### State of New York
### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  February 26, 2015                    519128

_____

NEW YORK STATE WORKERS'
    COMPENSATION BOARD, as
    Administrator of the
    Workers' Compensation Law
    and Attendant Regulations
    and as Successor in
    Interest to THE
    MANUFACTURING INDUSTRY
    WORKERS' COMPENSATION
    SELF-INSURANCE TRUST
    et al.,
                          Appellant-              MEMORANDUM AND ORDER
                          Respondent,

        v

CONSOLIDATED RISK SERVICES,
    INC., et al.,
                          Respondents-
                          Appellants,
                          et al.,
                          Defendants.

_____


Calendar Date:  January 5, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

                        _____


        Rupp Baase Pfalzgraf Cunningham & Coppola, LLC, Buffalo
(Daniel E. Sarzynski of counsel), for appellant-respondent.

        Stenger, Roberts, Davis & Diamond, LLP, Wappingers Falls
(Ian Lindars of counsel), for Consolidated Risk Services, Inc.
and others, respondents-appellants.

Woods Oviatt Gilman LLP, Rochester (Andrew J. Ryan of counsel), for Mark Bartlett, respondent-appellant.

Maguire Cardona PC, Albany (Kathleen A. Barclay of counsel), for Hickey-Finn & Co., Inc., respondent-appellant.

Nelson Brown & Co., New York City (Marc S. Voses of counsel), for David Bramwell, respondent-appellant.

Hodgson Russ LLP, Albany (Christian J. Soller of counsel), for Melvin Hodis and others, respondents-appellants.

Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (Sheryl T. Parker of counsel), for Regnier Consulting Group, Inc., respondent-appellant.

_____

Lynch, J.

Cross appeals from an order of the Supreme Court (Platkin, J.), entered September 4, 2013 in Albany County, which, among other things, partially granted defendants' motions to dismiss the complaint.

In December 2011, plaintiff commenced this action in its capacity as the governmental agency charged with administering the state's workers' compensation system and as successor in interest to certain group self-insured trusts that were formed to provide workers' compensation coverage to employees of the trusts' members (see Workers' Compensation Law § 50 [3-a]; 12 NYCRR 317.2 [i]; 317.3). The trusts at issue herein are the New York Manufacturing Industry Workers' Compensation Self-Insurance Trust (hereinafter NYMIT), created in October 1997, the Provider Agency Trust for Human Services Workers' Compensation Trust (hereinafter PATH), created in November 1996, and the Retail & Wholesale Industry Workers' Compensation Trust of New York (hereinafter RITNY), created in June 1998. Defendants are the third-party administrator for the trust, Consolidated Risk Services, Inc. (hereinafter CRS), along with its employees and

related corporate entities (hereinafter collectively referred to as the CRS defendants), insurance brokers allegedly engaged in marketing the trusts, the former trustees of RITNY, and Regnier Consulting Group, Inc., which provided actuarial reports for RITNY.

Plaintiff alleges that, as a result of defendants' misconduct and malfeasance, the trusts became insolvent, requiring it to assume administration of NYMIT in March 2006, PATH in February 2006 and RITNY in October 2008, and that a forensic audit revealed deficits ranging from approximately $7 million to $25 million (see 12 NYCRR 317.20). Plaintiff commenced this action seeking to recover the trusts' accumulated deficits from defendants, alleging numerous causes of action, including breach of fiduciary duty, fraud and fraud in the inducement against the CRS defendants and the insurance brokers, breach of contract against the RITNY trustees, and common-law indemnification against all defendants. Defendants separately moved to dismiss the complaint.

As relevant here, Supreme Court partially denied the motions by the CRS defendants and insurance brokers to dismiss the breach of fiduciary duty, fraud and fraudulent inducement claims as untimely, finding that the claims were timely as to allegations on or after certain dates, and that questions of fact exist regarding whether the "discovery rule" would permit review of allegations relating to conduct before those dates on certain claims. With respect to the RITNY trustees, the court dismissed as untimely the breach of contract claim against certain trustees — defendants Jennifer Bartlett and Alice Nykaza — because they demonstrated that their services as trustees terminated more than six years before the action was commenced, but denied the motions to dismiss of the remaining former trustees.[1] The court also dismissed the cause of action for implied indemnification, as asserted against all defendants.

_____

[1] In their brief, the trustees indicate that plaintiff has since discontinued all of its claims against defendant trustees Gil Rouff, Kathleen Smith, Jamie Striley, James Groff, Melvin Hodis and William Mooradian.

Plaintiff now appeals and, in its brief, challenges only those portions of Supreme Court's order as limited the temporal scope of its claim for breach of fiduciary duty against the CRS defendants and insurance brokers, and dismissed its claim for common-law indemnification. The CRS defendants cross-appeal. Defendant Hickey-Finn & Co., Inc., an insurance broker, also cross-appeals, as limited by its notice of appeal, from so much of the order as partially denied its motion to dismiss the claims of breach of fiduciary duty, fraud and fraud in the inducement against it. Finally, former RITNY trustee defendant Mark Bartlett cross-appeals, as limited by his notice of appeal, from the partial denial of his motion to dismiss the claim for breach of contract against him.[2]

Initially, we agree with plaintiff that Supreme Court improperly limited the temporal scope of the actionable misconduct on its breach of fiduciary duty claim. Plaintiff maintains that the court misapplied the repudiation rule, which provides that "the applicable statutory period . . . does not begin to run until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated" (Westchester Religious Inst. v Kamerman, 262 AD2d 131, 131 [1999]; see Tydings v Greenfield, Stein & Senior, LLP, 11 NY3d 195, 201-202 [2008]; Matter of Baird, 58 AD3d 958, 959 [2009]). The Court of Appeals has instructed that, under the repudiation rule, "the time starts running when a successor [fiduciary] is put in place" (Tydings v Greenfield, Stein & Senior, LLP, 11 NY3d at 202). After the fiduciary "has yielded . . . to a successor, . . . [t]he running of the statute [of limitations] then begins, and only actual or intentional fraud will be effective to suspend it" (Spallholz v Sheldon, 216 NY 205, 209 [1915] [citations omitted]; accord Tydings v Greenfield, Stein & Senior, LLP, 11 NY3d at 201).

_____

[2] The parties have abandoned any challenges that they may have had to Supreme Court's resolution of the motions to dismiss the remaining causes of action by failing to raise those challenges in their briefs (see e.g. HSBC Bank USA, N.A. v Ashley, 104 AD3d 975, 975 n [2013], lv dismissed 21 NY3d 956 [2013]).

Here, for purposes of defendants' motion to dismiss, we accept as true the allegations in the complaint that a fiduciary relationship existed between the CRS defendants and the trusts, of which plaintiff is the successor in interest, and afford plaintiff the benefit of every favorable inference (see e.g. EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; Murray Bresky Consultants, Ltd. v New York Compensation Manager's, Inc., 106 AD3d 1255, 1258 [2013]).  That fiduciary relationship would have terminated on the dates that CRS ceased administration of the trusts in 2006, and Supreme Court properly determined that the limitations period commenced running at that point (see Tydings v Greenfield, Stein & Senior, LLP, 11 NY3d at 201; Spallholz v Sheldon, 216 NY at 209).[3]  The court erred, however, in failing to apply the repudiation rule as a "toll" and in sustaining the claim only with respect to misconduct that was otherwise timely.  The limitations period for all breaches of fiduciary duty, regardless of when they occurred, was tolled until CRS ceased administration of the trusts and, thus, all misconduct would "fall[] within the permissible temporal scope of the" claims so long as any portion of the claim fell within the limitations period (Westchester Religious Inst. v Kamerman, 262 AD2d at 132; see Golden Pac. Bancorp v Federal Deposit Ins. Corp., 273 F3d 509, 519 [2d Cir 2001]).  That is, the repudiation rule acts as a toll of the limitations period for all misconduct committed by the fiduciary prior to repudiation of its obligation or termination of the relationship.  In other words, all of the alleged misconduct prior to the severance date is included in the actionable portion of the claim.

We reject the argument of the CRS defendants on their cross appeal that the statute of limitations for the entire breach of fiduciary duty claim is three years, rather than six.  The

_____

[3]  Contrary to the CRS defendants' argument, Spallholz v Sheldon (supra) contemplates that the repudiation and discovery rules extend beyond claims for an accounting to the recovery of monetary damages for breach of fiduciary duty; Spallholz was an action to reclaim excessive payments to a trustee, not an action for an accounting (Spallholz v Sheldon, 216 NY at 208-209; see People v Ben, 55 AD3d 1306, 1308 [2008]).

parties are in agreement that, because plaintiff does not seek equitable relief, a six-year statute of limitations period applies to the breach of fiduciary duty claim against CRS only if "an allegation of fraud is essential to" the claim (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 139 [2009]; see New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d 1148, 1154 [2014]).  To state a claim for fraud, a plaintiff must allege "that the defendant knowingly misrepresented a material fact for the purpose of inducing reliance upon it, that there was, in fact, justifiable reliance thereon, and that damages resulted" (Paolucci v Mauro, 74 AD3d 1517, 1520 [2010] [internal quotation marks and citation omitted]).  In addition, and particularly relevant here, "[f]raud may also result from a fiduciary's failure to disclose material facts when the fiduciary had a duty to disclose and acted with the intent to deceive" (id.; see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178 [2011]; Kaufman v Cohen, 307 AD2d 113, 119-120 [2003]).

Here, a portion of plaintiff's breach of fiduciary duty claim is grounded in its allegations that the CRS defendants breached their fiduciary duties to the trusts by fraudulently concealing or misrepresenting the financial condition of the trusts, the danger of operating deficits and issues associated with underwriting deficiencies, and that CRS did so as part of a scheme to increase membership and thereby increase its own commissions.  These are fraud allegations, and they are essential to this portion of the fiduciary duty claim.  That is, the relevant portion of the claim is "based on fraud" and "there would be no injury but for the fraud" (Paolucci v Mauro, 74 AD3d at 1520 [internal quotation marks and citation omitted]).  As such, that portion of the fiduciary duty claim is subject to a six-year limitations period (see New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d at 1154; Paolucci v Mauro, 74 AD3d at 1519-1520; see also McDonnell v Bradley, 109 AD3d 592, 594-595 [2013]; Carbon Capital Mgt., LLC v American Express Co., 88 AD3d 933, 939-940 [2011]; Monaghan v Ford Motor Co., 71 AD3d 848, 850 [2010]; Kaufman v Cohen, 307 AD2d at 120).

While we further reject the CRS defendants' assertions that Supreme Court improperly applied the "discovery rule" to certain of those defendants on the fraud and fraudulent inducement

claims, we agree with Hickey-Finn, whose marketing agreements with PATH and NYMIT terminated effective January 1, 2000, that the court erred in relying upon that rule to sustain the claims against it. The "discovery rule" is found in CPLR 213 (8), which provides that claims based on fraud "must be commenced [within] the greater of six years from the date the cause of action accrued or two years from the time [a] plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." It is settled that "[t]he inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which [the fraud] could be reasonably inferred" (Sargiss v Magarelli, 12 NY3d 527, 532 [2009]; see Elhannon, LLC v Brenda J. DeLuca Trust, 108 AD3d 911, 912 [2013]; Kaufman v Cohen, 307 AD2d at 123; Waters of Saratoga Springs v State of New York, 116 AD2d 875, 877-878 [1986], affd 68 NY2d 777 [1986]).

As regards CRS and its employees, Supreme Court determined that questions of fact exist regarding whether misconduct predating the statute of limitations period is cognizable under the two-year discovery rule. With respect to the insurance brokers, the court concluded that the fraud causes of action, along with the cause of action for breach of fiduciary duty, were untimely under a six-year statute of limitations, but that the record did not foreclose application of the discovery rule. Both the CRS defendants and Hickey-Finn argue that the claims against them are untimely even pursuant to the discovery rule because plaintiff could have discovered the fraud with reasonable diligence within two years of assuming administration of PATH and NYMIT in 2006 or, at the latest, when plaintiff received forensic accounting reviews for those trusts in 2008. In addition, the CRS defendants contend that the alleged fraud with respect to RITNY could have been discovered in 2002 when, according to the complaint, an audit revealed "material deficiencies" in that trust's funding status.

As Hickey-Finn notes, plaintiff argues before this Court that "[i]t was only after . . . a forensic audit was completed[] that [plaintiff] possessed knowledge of the facts from which the fraud [committed by CRS] reasonably could be inferred." In light of plaintiff's admission that it had knowledge of the facts from

which fraud could reasonably be inferred after receiving the forensic accountings, the two-year discovery rule would run from the date that plaintiff received the audit reports, February 19, 2008 for NYMIT and PATH, and June 11, 2010 for RITNY. Consistent with that admission, a review of the reports "unequivocally establish[es] that plaintiff was possessed of facts" upon receiving them "that put it on notice of a potential fraud claim" (Elhannon, LLC v Brenda J. DeLuca Trust, 108 AD3d at 913). Thus, to be timely under the discovery rule, an action on the claims involving NYMIT and PATH was required to be commenced by February 19, 2010, and on the claims involving RITNY by June 11, 2012, absent a further toll of the statute of limitations. This action was commenced on December 5, 2011. Even pursuant to the discovery rule, then, the fiduciary duty, fraud and fraudulent inducement claims are untimely with respect to Hickey-Finn, which had no involvement with RITNY (see Elhannon, LLC v Brenda J. DeLuca Trust, 108 AD3d at 913; cf. Kaufman v Cohen, 307 AD2d at 123).

As to the CRS defendants, however, the discovery rule would render all fraud claims regarding RITNY timely if receipt of the forensic audits is the earliest date that plaintiff could be said to have possessed knowledge of facts from which fraud could reasonably be inferred. Moreover, because it is undisputed that a tolling agreement extended the statute of limitations period for CRS and its employees by approximately 33 months, from February 2009 through November 30, 2011, the claims involving NYMIT and PATH would also be timely as to those defendants.[4] Although the CRS defendants argue that the fraud against RITNY was discoverable in 2002 when an audit revealed material deficiencies in funding, plaintiff persuasively responds that the audit uncovered only funding issues related to reserves and liabilities at a particular point in time, not evidence of an intentional failure to disclose the true financial state of RITNY and the dangers related to its operating at a deficit. In our

_____

[4]  Regarding the CRS entities not covered by the tolling agreement — the corporate affiliates — the claims involving NYMIT and PATH are timely only with respect to misconduct occurring on or after December 5, 2005.

view, given the complex nature of the fraud allegations —
including the fact that forensic accountings were required to
determine the circumstances constituting the fraud — Supreme
Court properly determined that questions of fact exist regarding
whether the discovery rule should apply such that alleged
misconduct predating the six-year limitations period is
cognizable on the fraud claims against the CRS defendants
involving RITNY, and on those claims against CRS and its
employees involving NYMIT and PATH (see Kaufman v Cohen, 307 AD2d
at 123).

Turning to the arguments of defendant David Bramwell, a
former employee of CRS who submits his own brief on the CRS
defendants' cross appeal, we are unpersuaded by his assertion
that his affidavit and documentary evidence conclusively
demonstrated that his employment with CRS terminated in September
1996, such that he had no obligations under the relevant
agreements, and that all claims against him were, in any event,
barred by the statute of limitations.  "Under CPLR 3211 (a) (1),
a dismissal is warranted only if the documentary evidence
submitted conclusively establishes a defense to the asserted
claims as a matter of law" (Leon v Martinez, 84 NY2d 83, 88
[1994]; see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314,
326 [2002]).  Contrary to his assertions, Bramwell cannot rely
upon his own affidavit in seeking dismissal based on that
provision — "such an affidavit does not constitute documentary
evidence upon which a proponent of dismissal pursuant to CPLR
3211 (a) (1) may rely" (State of N.Y. Workers' Compensation Bd. v
Madden, 119 AD3d 1022, 1029 [2014]; see State Farm Fire & Cas.
Co. v Main Bros. Oil Co., 101 AD3d 1575, 1577 n 3 [2012]).  While
the remaining documentary evidence establishes that Bramwell left
CRS in 1996, it does not establish that he had no further
employment by CRS.  In that regard, plaintiff submitted evidence
— the forensic accounting report for RITNY — indicating that
Bramwell left CRS in or around 2002.  Inasmuch as Bramwell's
documentary evidence does not "'utterly refute[]'" plaintiff's
factual allegations (New York State Workers' Compensation Bd. v
SGRisk, LLC, 116 AD3d at 1153, quoting Goshen v Mutual Life Ins.
Co., 98 NY2d at 326; see State of N.Y. Workers' Compensation Bd.
v Madden, 119 AD3d at 1026, 1029), and giving plaintiff the
benefit of every favorable inference (see EBC I, Inc. v Goldman,

Sachs & Co., 5 NY3d at 19), we conclude that plaintiff adequately stated its causes of action against Bramwell. Similarly, given the potential application of the repudiation and discovery rules against Bramwell, as discussed above, Supreme Court properly concluded that questions of fact preclude dismissal on statute of limitations grounds at this stage of the proceedings.

On his cross appeal, Bartlett, a former trustee of RITNY, challenges Supreme Court's denial of his motion to dismiss plaintiff's breach of contract claim against the trustees of RITNY. Supreme Court dismissed a breach of fiduciary duty claim against those trustees as untimely pursuant to a three-year statute of limitations. Bartlett argues that the breach of contract claim is also untimely because it is merely a restatement of the breach of fiduciary duty claim and that, in any event, there is no express or implied contract between the trustees and the trust because fundamental elements required for a contract — mutual assent and consideration (see Maas v Cornell Univ., 94 NY2d 87, 93-94 [1999]; Apfel v Prudential-Bache Sec., 81 NY2d 470, 475-476 [1993]) — are absent. In our view, both of these arguments lack merit, and plaintiff adequately stated a cause of action for breach of contract to survive a motion to dismiss.

To state a cause of action for breach of contract, a plaintiff must allege "formation of a contract, performance by one party, failure to perform by another and resulting damage" (New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d at 1153). As Bartlett concedes, the same conduct that constitutes a breach of contractual obligation may also constitute a breach of fiduciary duty (see e.g. id. at 1153-1154). Here, plaintiff alleged that Bartlett executed a "Designation of Trustee" form in 2004, in which he agreed to accept all duties and responsibilities of a trustee in accordance with RITNY's trust agreement. Plaintiff further alleged that, although RITNY provided workers' compensation insurance to the trust members, the RITNY trustees caused damages in excess of $7 million to the trust when they breached their contractual duties by, among other things, failing to ensure that the trust's underwriting practices and discount policies were reasonable and consistently applied, failing to evaluate new members properly,

failing to hold regular board meetings, failing to take remedial actions to address RITNY's underfunding and failing to properly monitor CRS's management of RITNY. Accepting these facts as true, plaintiff adequately stated a cause of action for breach of contract by alleging formation of a contract between RITNY and the trustees, that the trust performed its obligations while the trustees, including Bartlett, did not, and that RITNY was damaged as a result.

This Court recently found that nearly identical allegations were sufficient to state a claim for breach of contract (see Murray Bresky Consultants, Ltd. v New York Compensation Manager's, Inc., 106 AD3d at 1256-1258; see also New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d at 1153), and Bartlett's arguments that the required contractual elements of mutual assent and consideration were absent provide no basis for distinguishing those cases. As Supreme Court concluded, Bartlett's assent is manifest in his signed, notarized agreement expressly "accept[ing] all duties and responsibilities of [a trustee] in accordance with the terms and conditions of the Trust Agreement." Regarding consideration, we note that every trustee's service was undertaken on behalf of their employers who were parties to a complex relationship with the trusts, and agree with Supreme Court that the record does not foreclose the possibility that consideration flowed to the trustees via their employers.

Finally, based upon this Court's recent precedent, the portion of plaintiff's common-law indemnification claim that was asserted against the RITNY trustees must be reinstated. Plaintiff acknowledges that, although it appealed from that portion of Supreme Court's order as dismissed its common-law indemnification claim in the entirety, this Court's decision in State of N.Y. Workers' Compensation Bd. v Madden (119 AD3d 1022 [2014], supra) — which involved a substantially similar factual background and was decided while this appeal was pending — precludes it from seeking indemnification except as against the trustee defendants (id. at 1023-1025). However, as plaintiff further argues, Madden dictates that its claims against the trustees be reinstated on the ground that the trustees "owed a common duty to the covered employees to ensure that the trust

maintained adequate reserves such that its assets would cover its liabilities" (id. at 1025; see Murray Bresky Consultants, Ltd. v New York Compensation Manager's, Inc., 106 AD3d at 1258-1259).

The parties' remaining arguments, to the extent not rendered academic by our decision, have been considered and found to be lacking in merit.

McCarthy, J.P., Egan Jr. and Clark, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied the motion of defendant Hickey-Finn & Co., Inc. to dismiss the first, fourth and fifth causes of action against it, (2) limited the actionable misconduct to the limitations period on the first cause of action as to the remaining defendants, and (3) granted the motion of defendants Mark Bartlett, Ronald Birdsall, Bonnie Carpineta, Robert Finch, Vince Minieri, Thomas Mirabito and William Bonisteel to dismiss the common-law indemnification claims against them; motion by Bartlett, Birdsall, Carpineta, Finch, Minieri, Mirabito and Bonisteel to dismiss is denied to the extent asserted by plaintiff in its governmental capacity as the entity charged with the administration of the Workers' Compensation Law, motion by Hickey-Finn to dismiss the first, fourth and fifth causes of action is granted and said claims dismissed, and matter remitted to the Supreme Court to permit defendants to serve an answer within 20 days of the date of this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court